UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel*. Robbie Garrett and James Daniel Garrett, and ROBBIE GARRETT and JAMES DANIEL GARRETT, individually,<br><br>          Plaintiffs,<br><br>    v.<br><br>KOOTENAI HOSPITAL DISTRICT d/b/a KOOTENAI HEALTH,<br><br>          Defendant. | Case No. 2:17-cv-00314-CWD<br><br>**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISMISS (DKT. 36)** |

## INTRODUCTION

Robbie Garrett and James Daniel Garrett (Relators) filed this *qui tam* action under seal against Defendant Kootenai Hospital District, d/b/a Kootenai Health (Kootenai Health), on July 31, 2017. (Dkt. 1.) An amended complaint was filed on September 19, 2019, asserting claims under the False Claims Act (FCA), 31 U.S.C. § 3729 *et seq*. and Idaho common law. (Dkt. 29.) The FCA fraud claims stem from the Relators' assertion that Kootenai Health engaged in a scheme to commit fraud by systemically violating Medicare laws to collect undeserved reimbursements from the United States. (Dkt. 29 at ¶¶ 2, 3.) Ms. Garrett, individually, brings claims of FCA retaliation and termination of employment in violation of public policy under Idaho common law.

Following a period of investigation, the United States of America declined to intervene and the case was unsealed (Dkt. 11, 12, 32, 34.) Presently before the Court is Kootenai Health's motion to dismiss all claims in the amended complaint. (Dkt. 36.) The parties have filed responsive briefing and the motion is ripe for the Court's review. (Dkt. 42, 46.) Upon finding the facts and legal arguments are adequately presented in the briefs and record, the Court will decide the motion on the record without oral argument. For the reasons that follow, the Court will deny the motion to dismiss.[1]

## BACKGROUND[2]

Relator Robbie Garrett worked for Kootenai Health from approximately August of 2015 until July 24, 2017, as the executive director of quality services. (Dkt. 29 at ¶ 19.) Relator James Daniel Garrett is Ms. Garrett's spouse. Kootenai Health owns and operates a hospital, Kootenai Medical Center, located in Coeur d'Alene, Idaho, as well as approximately fifty affiliated clinics and other facilities in Idaho, Montana, Oregon, and Washington. The complaint alleges the majority of Kootenai Health's patients were Medicare beneficiaries and just over one-half of Kootenai Health's net patient-service revenues came from the Medicare program. (Dkt. 29 at ¶ 29.)

---

[1] All parties have consented to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Dkt. 15.)

[2] The facts are recited from the allegations in the first amended complaint and must be taken as true for purposes of deciding this motion. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). The Court will, hereafter, refer to the first amended complaint as "the complaint."

Medicare is a federally funded program that pays for certain healthcare services provided to qualified Medicare beneficiaries. 42 U.S.C. § 1395c. The program is administered by the Centers for Medicare & Medicaid Services (CMS), which is part of the United States Department of Health and Human Services (HHS). CMS enters into agreements with healthcare providers, such as Kootenai Health, to establish their eligibility to participate in the Medicare program. Eligible participating providers may seek reimbursement from CMS for services rendered to Medicare program beneficiaries. During the time relevant to the claims, Kootenai Health was an authorized participating provider of Medicare and, therefore, eligible to submit claims to CMS for reimbursement from federal funds.

Part A of the Medicare program authorizes payment of federal funds for inpatient hospital services and other health services. Part B applies to outpatient services. To become an authorized Medicare participating provider in both Medicare Part A and Part B, Kootenai Health certified that it would abide by Medicare laws, regulations, and program instructions, and agreed that Medicare's payment of claims was conditioned upon its compliance with the same and with all conditions of participation.

To receive reimbursement from Medicare for services provided to beneficiaries, Kootenai Health submitted claim form CMS-1500, which made the following certification:

> In submitting this claim for payment from federal funds, I certify that: 1) the information on this form is true, accurate and complete ... 3) I have provided or will provide sufficient information required to allow the government to make an informed eligibility and payment decision; 4) this claim, whether submitted by me or on my behalf by my designated billing

company, complies with all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment.

....

(Dkt. 29 at ¶ 146 and Ex. J.)

In her position at Kootenai Health, Ms. Garrett was responsible for auditing Kootenai Health's practices to ensure compliance with federal regulations. Ms. Garrett alleges that, during the course of her employment, she personally observed, and her audits revealed, widespread violations of federal laws, regulations, and guidelines. The complaint identifies six specific acts that make up the alleged fraudulent scheme. Namely, that Kootenai Health presented false claims and used false records or statements material to those claims to obtain Medicare reimbursements for:

Services rendered at facilities it fraudulently represented as "provider-based" facilities.

Services provided by non-physicians using the Medicare Physicians' Fee Schedule (MPFS).

Inpatient admissions without physicians' orders.

Patients billed for co-payments in violation of the Emergency Medical Treatment and Labor Act (EMTLA).

Claims that contained false diagnosis codes.

Patients whose rights Kootenai Health had violated by failing to provide the requisite discharge notices and using handcuffs as restraints.

(Dkt. 29.) Relators allege these fraudulent acts caused Medicare to pay Kootenai Health reimbursements it was not otherwise entitled to receive based on Kootenai Health's false certification that it had provided services or complied with all Medicare laws, regulations, and program requirements when, in fact, it had not done so. (Dkt. 29 at ¶¶ 1-5.)

MEMORANDUM DECISION AND ORDER - 4

Ms. Garrett contends that, while working at Kootenai Health, she made numerous attempts to correct the alleged illegal practices and made numerous reports about those practices to her supervisors and Kootenai Health's directors, but was met with resistance, harassment, and, ultimately, termination from her employment. As a result, Relators filed this action raising the following claims against Kootenai Health:

> First Claim for Relief: presentation of false claims in violation of Section 3729(a)(1)(A) of the FCA.

> Second Claim for Relief: making or using false record or statement to cause false claim to be paid in violation of Section 3729(a)(1)(B) of the FCA.

> Third Claim for Relief: retaliation in violation of Section 3730(h) of the FCA.

> Fourth Claim for Relief: termination of employment in violation of public policy.

(Dkt. 29.) Kootenai Health moves to dismiss all of the claims pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6). (Dkt. 36.)

## STANDARD OF LAW

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," sufficient to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a challenge under Rule 12(b)(6), a "complaint must plead 'sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Godecke, ex rel. U.S. v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).

"A Rule 12(b)(6) dismissal 'can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Godecke*, 937 F.3d at 1208 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). When reviewing a motion to dismiss, the Court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Fraud claims under the FCA must not only be plausible, under Rule 8(a), but also must be pled with particularity under Rule 9(b). *Godecke*, 937 F.3d at 1208 (citing *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054–55 (9th Cir. 2011)). "Rule 9(b) requires that the circumstances alleged to constitute fraud be specific enough to give the defendant notice of the particular misconduct so that it can defend against the charge." *Id.* (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)). To adequately plead fraud with particularity, a plaintiff must allege the "'who, what, when, where, and how' of the misconduct charged," as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *U.S. ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 676 (9th Cir. 2018) (quoting *Cafasso*, 637 F.3d at 1055); *see also Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

## ANALYSIS

### 1.    Fraud Under the FCA

The FCA imposes liability on anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or

fraudulent claim." 31 U.S.C. §§ 3729(a)(1)(A), (B). To state a claim under the FCA for both the first and second claims for relief, the Relators must show: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *Godecke*, 937 F.3d at 1208 (*U.S. ex rel. Campie v. Gilead Sciences, Inc.*, 862 F.3d 890, 899 (9th Cir. 2017)). The falsity and materiality allegations must satisfy Rule 9(b)'s particularity standard, while scienter allegations need satisfy only the Rule 8 notice pleading standard. *See Silingo*, 904 F.3d at 679 ("Although the circumstances of a fraud must be pleaded with particularity, knowledge may be pleaded generally.").

On this motion, Kootenai Health argues both FCA claims should be dismissed because the complaint fails to plausibly or particularly plead facts demonstrating the first three elements of fraud and that the allegations of fraudulent activity are "fatally deficient." (Dkt. 36, 46.) For the reasons that follow, the Court finds the FCA claims are adequately stated and, therefore, the motion to dismiss will be denied as to the first and second claims for relief.

### A.     False Statement or Fraudulent Course of Conduct

Relators assert two theories of FCA liability, alleging Kootenai Health submitted claims for reimbursement to Medicare that were 1) factually false and 2) legally false.

A factually false claim is the prototypical FCA action, alleging "an explicit lie in a claim for payment, such as an overstatement of the amount due." *U.S. ex rel. Modglin v. DJO Global Inc.*, 48 F. Supp. 3d 1362, 1387 (C.D. Cal. 2014). "A factually false claim is one in which 'the claim for payment is itself literally false or fraudulent,' *United States ex*

*rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1170 (9th Cir. 2006), such as when the claim 'involves an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided,'" *Mikes v. Straus*, 274 F.3d 687, 697 (2d Cir. 2001).

A legally false claim occurs when a party represents, or falsely certifies, compliance with a statute or regulation as a condition to payment without actually complying with the statute or regulation. *Hendow*, 461 F.3d at 1171. There are two types of false certification claims—express false certification and implied false certification.

Express false certification "'means that the entity seeking payment [falsely] certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted.'" *U.S. ex rel. Rose v. Stephens Institute*, 909 F.3d 1012, 1017 (9th Cir. 2018) (quoting *Ebeid*, 616 F.3d at 998). Implied false certification "occurs when an entity has *previously* undertaken to expressly comply with a law, rule, or regulation [but does not], and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim." *Id.* (emphasis in original). "[T]he implied certification theory can be a basis for liability, where two conditions are satisfied: first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2001 (2016); *see also Rose*, 909 F.3d at 1018.

MEMORANDUM DECISION AND ORDER - 8

Kootenai Health argues the allegations in the complaint do not identify with particularity the who, what, when, where, and how of the alleged misconduct sufficient to satisfy Rule 9's requirements for pleading fraud under either theory. (Dkt. 36.) The Court disagrees.

"To state an FCA claim, a relator is not required to identify actual examples of submitted false claims; instead, 'it is sufficient to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *Godecke*, 937 F.3d at 1209 (quoting *Ebeid*, 616 F.3d at 998–99 (marks and citation omitted)). Although representative examples are one means of meeting the pleading obligation, a "relator is not required to identify representative examples of false claims to support every allegation." *Id*. For purposes of this motion, the Relators have met their burden.

Relators claim Kootenai Health engaged in a scheme to defraud the government by submitting fraudulent claims and using false records material to claims presented to Medicare. The alleged scheme is composed of six acts which are set forth in the complaint. Namely, that Kootenai Heath fraudulently obtained reimbursements from Medicare 1) for services rendered at facilities it fraudulently represented as "provider-based" facilities; 2) for services provided by non-physicians using the MPFS billing codes applicable to physician-provided care; 3) for inpatient admissions without physicians' orders; 4) for patients billed for co-payments in violation of EMTLA; 5) for claims containing false diagnosis codes; and 6) for patients whose rights Kootenai Health violated. (Dkt. 29 at ¶ 3.)

MEMORANDUM DECISION AND ORDER - 9

Relators allege that all six acts were legally fraudulent, either expressly or implicitly, under the false certification theory; i.e., that Kootenai Health submitted claims to Medicare falsely certifying it had complied with all laws, rules, or regulations governing the reimbursement of claims or other provision of benefits when, in fact, it had not done so. Two of the fraudulent acts, Relators contend, were also factually false: 1) improper use of MPFS billing codes for non-physician services and 2) claims containing false diagnosis codes.

As discussed below, the Court finds the six acts of the alleged scheme are stated with particularity. The complaint details the facts and circumstances underlying the fraudulent acts and, often, includes examples of the fraudulent conduct or particular violation allegedly committed by Kootenai Health. (Dkt. 29 at ¶¶ 47, 48, 56, 63, 64, 76, 103, 109.)

The first fraudulent act alleged is that Kootenai Health obtained reimbursement from Medicare for services rendered at facilities it falsely represented were provider-based facilities when, in fact, they were not. The complaint alleges Kootenai Health billed Medicare for services rendered at facilities that had been moved from its hospital campus to remote locations without updating the enrollment information or obtaining provider-based status for the relocated facilities. (Dkt. 29 at ¶¶ 30-52.) This practice continued until November 2016 when, at Ms. Garrett's "insistence," Kootenai Health corrected addresses for some of the relocated facilities. When doing so, however, Relators allege Kootenai Health falsified the dates for relocation and omitted other facilities "in an attempt to minimize the amounts CMS could recover" in overpayments.

(Dkt. 29 at ¶¶ 44, 45.) Additionally, the complaint alleges Kootenai Health billed Medicare at the provider-based rate for other facilities that had always been off campus -- seventeen in particular, that did not qualify for that status. This fraudulent practice enabled Kootenai Health to falsely bill Medicare at a higher rate and obtain a larger reimbursement than it was entitled to for services rendered at these facilities.

The second fraudulent act alleged is that, during Ms. Garrett's tenure, Kootenai Health routinely used the MPFS to fraudulently bill and obtain higher reimbursement from Medicare for services rendered by non-physicians as if the services were rendered by physicians. (Dkt. 29 at ¶¶ 53, 55, 60, 68, 69.) The complaint identifies some of the types of treatments allegedly performed by non-physicians. (Dkt. 29 at ¶ 56.) Importantly for this motion, the complaint describes the fraudulent conduct to involve Kootenai Health's practice of using "treatment protocols" that allowed non-physicians to perform certain procedures "automatically," coupled with its electronic medical record system that did not ensure a physician properly authenticated each protocol-based treatment. (Dkt. 29 at ¶¶ 61-63.) This practice, Relators allege, allowed Kootenai Health to submit claims using MPFS that were both legally and factually false and to obtain reimbursement it was not otherwise qualified to obtain.

The fifth act alleged is that Kootenai Health obtained Medicare reimbursement for claims containing false diagnosis codes. (Dkt. 29 at ¶¶ 92-100.) The complaint states Kootenai Health "intentionally recorded incorrect diagnosis codes to circumvent" and "fraudulently improve" certain specified regulatory quality measures for hospital-acquired conditions and to avoid a possible financial penalty to its Medicare

MEMORANDUM DECISION AND ORDER - 11

reimbursements for applicable hospital discharges. (Dkt. 29 at ¶¶ 92, 94, 96.) Kootenai Health's practice of submitting claims for reimbursement to Medicare using the incorrect diagnosis codes, Relators contend, is both factually and legally false and, therefore, fraudulent. (Dkt. 29 at ¶¶ 99, 100.)

The allegations describing the remaining three fraudulent acts, although somewhat less detailed, are likewise sufficiently particular to satisfy Rule 9 for purposes of deciding this motion. Each allege facts describing how, during Ms. Garrett's employment, Kootenai Health routinely submitted legally false claims for Medicare reimbursement certifying its compliance with all requirements for payment when, in fact, it had violated specific regulations. (Dkt. 29 at ¶¶ 72-77, 87, 91, 107, 109, 120.) This is adequate to provide Kootenai Health notice of the particular allegations of misconduct made against it so that it can defend against the claims.[3]

Moreover, the allegations in the complaint are paired with reliable indicia leading to a strong inference that Kootenai Health actually submitted false claims to Medicare. The FCA claims are based on Ms. Garrett's personal knowledge and observations made during the course of her employment at Kootenai Health, which span from approximately August 2015 until July 24, 2017. (Dkt. 29 at ¶¶ 19, 21, 22, 42, 55, 65, 72, 74-75, 78, 87, 88, 98, 99, 108, 117.) The complaint states that Ms. Garrett reported the alleged illegal

---

[3] Kootenai Health's briefing on this motion concerning the viability of the alleged regulatory violations is also indicative of the adequacy of the pleadings and that Kootenai Health is aware of and able to defend itself against the claims. (Dkt. 36, 46.)

conduct to Kootenai Health who did not correct the violations before submitting claims falsely certifying its compliance and, instead, directed Ms. Garrett to stop looking for violations. (Dkt. 29 at ¶¶ 44, 60, 77-81, 91, 96-100, 107.) Kootenai Health's alleged statements and actions made in response to Ms. Garrett's reports are indicative of the reliability of the allegations. (Dkt. 29 at ¶¶ 22, 52, 57, 63, 80-81, 108, 113, 116.) Other allegations are further indicia of the fraudulent nature of Kootenai Health's actions; such as, submitting claims at higher billing rates to receive larger reimbursement, acts designed to avoid financial penalties, and practices to expedite the payment of claims. (Dkt. 29 at ¶¶ 32, 44, 49, 80-81, 92, 96-100.)

For all of these reasons, the Court finds the allegations of the fraudulent scheme are sufficiently particular to state the FCA claims. The facts underlying the six fraudulent acts identify the specific circumstances of the alleged misconduct making up the FCA fraud claims; i.e., the who, what, when, where, and how of the acts. (Dkt. 29.) The complaint alleges particular details of a fraudulent scheme by Kootenai Heath coupled with a reliable indicia upon which a strong inference can be made that false claims and records were actually submitted to Medicare. *Ebeid*, 616 F.3d 998-99. The pleadings provide notice of the particular misconduct alleged to allow Kootenai Health to defend itself against the claims. *Godecke*, 937 F.3d at 1208. That is all that is required at this pleading stage.

### B.    Scienter

Liability under the FCA is established only when the defendant acts knowingly. 31 U.S.C. § 3729(a)(1). "Knowingly," in the context of the FCA, means a person: (1) has

"actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or (3) "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1). This element "require[s] no proof of specific intent to defraud" and need only meet Rule 8's general pleading standard. 31 U.S.C. § 3729(b)(1)(B). "[I]t is sufficient to plead that the defendant knowingly filed false claims, or that the defendant submitted false claims with reckless disregard or deliberate ignorance as to the truth or falsity of its representations." *Godecke*, 937 F.3d 1201.

The complaint alleges facts that plausibly show Kootenai Health's knowledge that it was filing false and fraudulent claims sufficient to satisfy Rule 8. The complaint states that Ms. Garrett made numerous reports to her supervisors and the directors of Kootenai Health about the violations upon which the fraud claims are based. (Dkt. 29 at ¶¶ 22, 42, 65, 79.) She alleges Kootenai Health acknowledged the reports but resisted Ms. Garrett's efforts to correct the allegedly illegal practices. (Dkt. 29 at ¶¶ 22, 80, 126.) Further, there are allegations from which Kootenai Health's knowledge can be inferred, such as emails and statements made by Kootenai Health's directors and the fact that Kootenai Health had been previously cited for some of the same regulatory violations. (Dkt. 29 at ¶¶ 52, 57, 63, 79-81, 108, 113, 116.) The Court finds this element of the FCA claims is properly plead.

## C.    Materiality

The FCA defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). To establish materiality, the false statement or conduct must be "material to

the government's decision to pay out moneys to the claimant." *Hendow*, 461 F.3d at 1173. The "key question is whether the government is likely to attach significance to the [statutory, regulatory, or contractual] requirement in deciding whether to tender payment." *United States v. Celgene Corp.*, 226 F. Supp. 3d 1032, 1049 (C.D. Cal. 2016) (citing *Escobar*, 136 S. Ct. at 2002-03 (2016)). This is a "demanding" requirement for a plaintiff to prove. *Escobar*, 136 S. Ct. at 2003.

Regulatory violations alone are not sufficient to give rise to a cause of action under the FCA. *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996). "A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Escobar*, 136 S. Ct. at 2003; *see also Rose.*, 909 F.3d at 1020 (A condition of payment is not automatically dispositive of materiality, but it is relevant.). Rather, "materiality looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation,' meaning the government." *Escobar*, 136 S. Ct. at 2002. In determining whether false claims are material, courts consider several relevant, but not necessarily dispositive, factors. *Godecke*, 937 F.3d at 1213 (setting forth the *Escobar* factors).

First, a court may consider whether the Government decided "to expressly identify a provision as a condition of payment." *Id.* Second, "evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement" weighs in favor of materiality. *Id.* Third, "if the Government pays a particular claim in

full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Id*. Fourth, "if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material." *Id*. at 2003–04. Fifth, materiality "cannot be found where noncompliance is minor or insubstantial." *Id*. at 2003; *see also Rose*, 909 F.3d at 1022 (*Escobar* factors include consideration of the magnitude of the violation; the likelihood of materiality increases with a violation's severity).

The facts asserted in the complaint here plausibly, and with the requisite particularity, show the allegedly fraudulent acts by Kootenai Health were material to Medicare's payment of funds. The complaint alleges Kootenai Health knowingly presented false claims and used false records causing Medicare to reimburse Kootenai Health for claims it was not otherwise entitled to receive payment for. (Dkt. 29 at ¶¶ 5, 160, 166, 167.)[4]

The complaint generally describes Medicare's statutory framework and that payments are conditioned upon compliance with Medicare's regulations, program instructions, and conditions of participation. (Dkt. 29 at ¶¶ 139-148.) The complaint then alleges that the particular fraudulent acts by Kootenai Health "caused the

---

[4] Much of Kootenai Health's briefing on the motion to dismiss disputes whether it violated the regulations, laws, and other program requirements. (Dkt. 36, 46.) Those arguments are not addressed in this Order as they are not relevant to the motion presently before the Court challenging the sufficiency of the pleading.

Government…to pay out sums it would not have otherwise paid…had it been made aware of the falsity of [the] claims and certifications." (Dkt. 29 at ¶¶ 160, 167.) And, that Kootenai Health knowingly presented false claims and used false records material to the false claims "causing Medicare to pay millions of dollars in reimbursements that should not have been paid." (Dkt. 29 at ¶ 5.) For example, the complaint alleges that "[a] claimant's compliance with the requirements for provider-based status is material to the government's decision to pay Medicare claims at the provider-based level [and] had the government known that [Kootenai Health's] facilities did not meet the requirements for provider-based status, it would not have reimbursed the claims at that level." (Dkt. 29 at ¶ 50.) These allegations plead materiality with sufficient particularity by asserting Medicare's payments of claims were influenced or caused by Kootenai Health's fraudulent acts, not merely because of any regulatory violations or conditions of payment.

The Court is mindful of the Supreme Court's instruction in *Escobar* that the FCA's materiality requirement is not "too fact intensive for courts to dismiss cases on a motion to dismiss or at summary judgment." *Escobar*, 136 S. Ct. at 2004 n. 6. Here, however, Kootenai Health's arguments concerning the *Escobar* factors, e.g., whether the government regularly pays or refuses to pay claims based on noncompliance with the regulatory requirements; whether Kootenai Health knew the government consistently refused to pay claims based on noncompliance with those regulations; and whether the noncompliance is minor or insubstantial, are considerations for a later motion. (Dkt. 46.) At this juncture, the complaint contains sufficient allegations regarding the materiality of Kootenai Health's acts to withstand a motion to dismiss.

2.       **Retaliation Under the FCA**

The complaint's third claim for relief is an FCA retaliation claim brought by Relator Robbie Garrett against Kootenai Health. Section 3730(h) of the FCA protects employees who come forward with evidence that that their employer is defrauding the Government from retaliation. *U.S. ex rel. Lupo v. Quality Assurance Servs., Inc.*, 242 F.Supp.3d 1020, 1028 (S.D. Cal. 2017). The statute protects an employee who is "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment" for acts "in furtherance of" an FCA claim or "other efforts to stop" fraud against the Government. 31 U.S.C. § 3730(h)(1).

To state a claim for retaliation under the FCA, Ms. Garrett must show that: (1) she engaged in activity protected under the statute; (2) Kootenai Heath knew she was engaged in protected activity; and (3) Kootenai Health retaliated against her because she engaged in protected activity. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). Unlike the fraud claims, the heightened pleading requirements of Rule 9(b) do not apply to the retaliation claim, which "need only satisfy the Rule 8(a) notice pleading standard...to survive a Rule 12(b)(6)" motion. *Id.* at 1104 (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1062 (9th Cir. 2004)).

Kootenai Health seeks dismissal of the retaliation claim, arguing Ms. Garrett's allegations do not establish that she was engaged in a protected activity; that Kootenai Health knew she was engaged in a protected activity; or a causal connection between the protected activity and Kootenai Health's retaliatory actions. (Dkt. 36.)

## A.   Protected Activity

"An employee engages in a protected activity by 'investigating matters which are calculated or reasonably could lead to a viable [FCA] action.'" *Campie*, 862 F.3d at 907 (9th Cir. 2017) (quoting *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002)). More specifically, "an employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government." *Moore*, 275 F.3d at 845.

To engage in a protected activity, the employee does not need to have "specific awareness" of the FCA or threaten the employer with suit pursuant to the FCA. *Moore*, 275 F.3d at 845; *Mendiondo*, 521 F.3d at 1104. "In fact, retaliation remains possible even if no FCA violation is ultimately proven or prosecuted." *Josey v. Impulse Dynamics (USA) Inc.*, 371 F. Supp. 3d 603, 608 (D. Ariz. 2019). The "investigatory activity" must, however, have a "nexus to the FCA." *Hopper*, 91 F.3d at 1269. Investigation of regulatory noncompliance alone or "attempting to get [an employer] to comply with Federal and State regulations" are not protected activities. *Id*.

The allegations in the complaint here are sufficient to state a plausible claim that Ms. Garrett was engaged in a protected activity. The complaint alleges Kootenai Health was engaged in a scheme to defraud the United States by submitting fraudulent and false claims to Medicare for services not provided or provided in violation of Medicare regulations and program requirements. (Dkt. 29 at ¶¶ 1-5.) Throughout the complaint, Ms. Garrett alleges she made numerous attempts to correct what she believed were illegal

MEMORANDUM DECISION AND ORDER - 19

practices by Kootenai Health done in furtherance of that fraudulent scheme, including reporting the regulatory violations to Kootenai Health. (Dkt. 29 at ¶¶ 21-22, 30, 40, 44, 49-50, 60, 69, 79-81, 96, 117, 124, 170-175) (e.g., "Robbie attempted numerous times to correct Defendant's illegal practices" and "[i]n an effort to correct the…illegal practices, Robbie reported this issue to her supervisors and Defendant's directors."). The allegations are sufficient to plausibly allege Ms. Garrett was engaged in a protected activity in connection to an FCA violation; namely, correcting illegal fraudulent billing practices. *Moore*, 275 F.3d at 845.

### B.    Notice

Ms. Garrett must next establish that Kootenai Health knew she was engaged in a protected activity. Unless an employer is aware its employee is investigating fraud, the employer cannot "possess the retaliatory intent necessary to establish a violation of § 3730(h)." *Hopper*, 91 F.3d at 1269 (citing *Robertson v. Bell Helicopter Textron*, 32 F.3d 948, 950–52 (5th Cir. 1994)). An allegation of knowledge is not a "high bar" at the motion to dismiss stage. *See Campie*, 862 F.3d at 908 (discussing *Mendiondo*, 521 F.3d at 1104).

When an employee's job duties involve monitoring and reporting activities, however, "it takes more than an employer's knowledge of that activity to show that an employer was on notice of a potential *qui tam* suit." *Campie*, 862 F.3d at 908 (citing *U.S. ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1523 (10th Cir. 1996) (holding retaliation allegation insufficient where plaintiff's job duties entailed the monitoring and reporting activities at issue); *Robertson*, 32 F.3d at 952. To show notice

MEMORANDUM DECISION AND ORDER - 20

in a retaliation claim based on activities falling within the relator's scope of employment, the relator must allege the law was being violated and the relator's intention to report the violation. *United States v. Somnia, Inc.*, 2018 WL 684765, at *10 (E.D. Cal. Feb. 2, 2018) (discussing *Campie* and *Ramseyer*).

Kootenai Health maintains the allegations here do not establish notice, since it had no way of knowing Ms. Garrett was investigating or reporting fraud because monitoring and reporting regulatory compliance were duties of Ms. Garrett's position as executive director of quality services. (Dkt. 36 at 18-19.) The Court disagrees.

The complaint alleges Ms. Garrett discovered widespread violations of the FCA and other federal laws, regulations, and guidelines during her employment. (Dkt. 29 at ¶¶ 19-21.) Ms. Garrett reported the violations to Kootenai Health. While Ms. Garrett's position involved auditing Kootenai Health's practices to ensure compliance with federal regulations, her reports to Kootenai Health making up the claims in this case were not exclusive to mere regulatory violations. Instead, the complaint alleges Ms. Garrett made numerous complaints and reports to Kootenai Health's officers and directors "[i]n an effort to correct the illegal practices." (Dkt. 29 at ¶¶ 22, 124, 172.) For example, the complaint alleges Ms. Garrett reported issues concerning reimbursements for inpatient admissions and other illegal practices to her supervisors and Kootenai Health's directors to "remediate" the problem. (Dkt. 29 at ¶¶ 56 at n. 6, 65, 78-80.) Ms. Garrett further alleges her supervisor acknowledged the "illegality" of Kootenai Health's billing for services by non-physicians using the physician fee scheduled; stating "the illegality of this situation kept her up at night." (Dkt. 29 at ¶ 57.) Importantly, Ms. Garrett alleges

Kootenai Health openly resisted her efforts to stop the illegal conduct by telling her to "stop looking for violations" and that she was costing Kootenai Health revenue; harassing Ms. Garrett; and, eventually, demanding that she resign. (Dkt. 29 at ¶¶ 22, 125-130.)

Drawing the inferences in favor of the nonmoving party, the allegations plausibly establish Kootenai Health was placed on notice that Ms. Garrett was investigating fraud which could reasonably lead to a viable FCA claim. Ms. Garrett's reports to Kootenai Health, as alleged, were made to correct alleged illegal fraudulent practices, not simply to report regulatory compliance issues in the course of her employment. Kootenai Health responded by openly and actively resisting her efforts. For purposes of this motion, the Court finds the allegations are sufficient with respect to notice. Whether the claim can survive a later substantive motion remains to be seen.

### C.    Causal Connection

The final element of the retaliation claim requires Ms. Garrett to show Kootenai Health retaliated against her, because she engaged in protected activity. Ms. Garrett claims Kootenai Health engaged in retaliatory actions, including harassment and termination, in response to her efforts to stop and correct the alleged illegal activities. (Dkt. 29 at ¶¶ 22, 171.)

Again, the complaint alleges Kootenai Health openly resisted Ms. Garrett's efforts to correct the illegal practices, told her to "stop looking for violations," stated her actions cost Kootenai Health revenue, and engaged in a "campaign of harassment" against Ms. Garrett by issuing baseless formal reprimands. (Dkt. 29 at ¶¶ 125-128, 130.) Ultimately, Ms. Garrett alleges, Kootenai Health "directly demanded" that she resign from her

position, which she did on July 24, 2017. (Dkt. 29 at ¶ 129.) These allegations are sufficient, at this stage, to state a plausible causal connection between Ms. Garrett's protected activities and the alleged retaliatory actions of Kootenai Health.

3.      **Termination in Violation of Public Policy under Idaho Common Law**

In Idaho, "[u]nless an employee is hired pursuant to a contract which specifies the duration of the employment, or limits the reasons why the employee may be discharged, the employee is 'at will.'" *Harris v. Treasure Canyon Calcuim Co.*, 132 F. Supp. 3d 1228, 1238 (D. Idaho 2015) (quoting *Venable v. Internet Auto Rent & Sales, Inc.*, 329 P.3d 356, 360 (Idaho 2014)). An at-will employee may be terminated "at any time [or] for any reason without creating liability." *Edmondson v. Shearer Lumber Products*, 75 P.3d 733, 737 (Idaho 2003). Idaho has, however, long recognized "a narrow exception to the at-will employment presumption where the employer's motivation for the termination contravenes public policy." *Id.* (quoting *Bollinger v. Fall River Rural Elec. Co-op., Inc.*, 272 P.3d 1263, 1271 (Idaho 2012)).

"A termination contravenes public policy only where an employee is terminated for engaging in some protected activity, which includes (1) refusing to commit an unlawful act, (2) performing an important public obligation, or (3) exercising certain legal rights and privileges." *Id.* To bring a successful claim under the public policy exception to the at-will employment presumption, "an employee must show (1) that she was engaged in a legally protected activity; and (2) that there is a causal relationship between her engagement in the protected activity and her termination." *Id.*

Kootenai Heath argues this claim should be dismissed because the complaint fails to state a legally viable claim, pleads insufficient facts to state a plausible claim, and is duplicative of the statutory remedy available under the FCA. (Dkt. 36.) Relators maintain they have stated a viable and plausible claim that Kootenai Health terminated Ms. Garrett's employment in violation of public policy. (Dkt. 41.) Relators further argue the claim is not duplicative because Ms. Garrett was performing an important public obligation, separate and distinct from the FCA violations, by protecting the health and well-being of Kootenai Health's patients. (Dkt. 41.) The Court finds the complaint states, at this stage of the pleadings, a plausible claim.

The complaint alleges Ms. Garrett was engaged in an important public obligation - protecting the health and well-being of Kootenai Health's patients. (Dkt. 29 at ¶¶ 121, 124-130, 173-177.) For purposes of this motion, Ms. Garrett's performance of that important public obligation is sufficiently linked to the allegations that Ms. Garrett was terminated in retaliation for her efforts to protect the health and well-being of Kootenai Health's patients.  (Dkt. 29 at ¶¶ 130, 176.) It is not decided at this stage, however, whether this claim is duplicative of the FCA claims. *See McWilliams v. Latah Sanitation, Inc.*, 554 F. Supp. 2d 1165, 1185 (D. Idaho 2008) ("[S]tatutory remedies under the ADA for the same allegations asserted within a wrongful discharge [in violation of public policy] claim necessarily preclude the latter, separate, duplicative claim."). Accordingly, the motion to dismiss will be denied with respect to the common law public policy claim.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Motion to Dismiss (Dkt. 36) is **DENIED**.

DATED: June 17, 2020

Honorable Candy W. Dale
United States Magistrate Judge